THE WESTERN & ATLANTIC RAILROAD CO. *v.* COX.

The present Western & Atlantic Railroad Company is liable, after notice to abate, for damages resulting from the continuance upon the right of way of the railroad of a nuisance placed there by the former company of the same name while it had possession of the railroad with the property appurtenant thereto, under lease from the State; and this is so, although that company created the nuisance in question in making an effort to abate another nuisance causing similar damages, of which complaint had been made by the plaintiff and others.

March 19, 1894.  Argued at the last term.

Action for damages.   Before Judge MILNER.   Whitfield superior court.   April term, 1893.

The declaration alleges as follows: At the time defendant took possession of its road and right of way, plaintiff was in possession of land lot No. 98 in the 13th district and 3d section of Whitfield county, and the road runs through that lot for nearly three fourths of a mile.   Plaintiff had and now has on the south side of the road forty acres of bottom land cleared and in cultivation, and of the value of fifty dollars per acre. About two years before defendant took possession of the road and its appurtenances, the former company operating and running said road cut a ditch on the right of way entirely through said lot, and instead of stopping the same at the northwest corner of his lot, it continued the ditch up its right of way until it intersected Swamp creek.   The effect of the ditch so continued was, in high water, to bring that creek or the larger part thereof down to his lands, at which point, the ditch being too shallow and too narrow to carry off the large volume of water accumulated therein from the creek, it overflowed his land, washing and injuring his soil, carrying away his

v 93-36

fences and preventing his cultivating said forty acres. While this state of affairs existed defendant went into possession of the road-bed, right of way and appurtenances, with knowledge of all the premises, and has kept the ditch open and continued said nuisance from the first of January, 1891, up to the bringing of this action, and during that time plaintiff has been prevented by said nuisance from making any crop on the forty acres, to his damage $400, and his land has been injured, by the washing of the soil away and the fencing, $600. He has given defendant notice in writing to abate the nuisance, and it fails and refuses to do so. He prays that on the trial the court will grant him such an order or decree as may compensate him for the injury already sustained, and will abate the nuisance by injunction or otherwise, and will protect him in the lawful enjoyment of his property. By amendment he says, that before the cutting of the ditch, the culvert through which Swamp creek ran was too small to carry off the water in time of high tide, and the water dammed up and ran down the high embankment of the railroad and overflowed and injured his lands and those of others, and on complaint by him and others the ditch was dug to prevent injury to his and other lands and remove all cause of complaint. When first cut the ditch was not cut to as low a level as the bottom of Swamp creek, but has year after year been deepened; and when taken possession of by defendant, it was more injurious to plaintiff than when first cut.

PAYNE & TYE and R. J. & J. McCAMY, for plaintiff in error. No appearance *contra.*

LUMPKIN, Justice.

Cox brought against the Western & Atlantic Railroad Company an action for damages, and afterwards amended his declaration. The substance of the declaration and

the amendment appear in the reporter's statement. The defendant moved orally to dismiss the case on the ground that no cause of action was set forth, and the bill of exceptions assigns as error the overruling of this motion. According to the allegations of the declaration, the ditch complained of was undoubtedly a nuisance which had been created upon the right of way by the former lease company of this railroad, and the continuance of the nuisance by the present company, after notice to abate the same, is the tort complained of. According to the decided weight of authority, if a private person rents or leases to another premises upon which a nuisance is existing at the time, the tenant, after notice to remove the same, will be liable for damages resulting from its continuance, upon the idea that, by suffering it to remain, he is, in effect, keeping up and maintaining it, just as if he had originally caused it to exist. This would seem to be the law, irrespective of the question whether or not the landlord would also be liable.

The main contention of the plaintiff in error in the present case is, that inasmuch as the ditch in question was in existence and on the right of way of the Western and Atlantic railroad when the property was leased to the present company, and it has in no way changed or interfered with the same, it cannot be held responsible for the act of a former tenant under whom it does not claim and between which and itself there is no privity.

It makes no difference how the nuisance came to be upon the property originally, and the real question is: can the defendant below be made liable for permitting it to remain, or, in other words, for maintaining it?' In view of the law above announced, the question would be free from difficulty were it not for the fact that the lease company is holding under a sovereign State, and is merely allowing the ditch, except as to the operation of natural causes, to remain in the same condition as when

the railroad was received from the State. As the State could not be made liable for maintaining a nuisance—indeed, is not subject to suit for any cause, except by its own consent,—there is considerable plausibility in the proposition that the rights of its lessee are as great as those of the State itself; and therefore, that the lessee should not be subjected to a liability which in no way attached to the sovereign lessor. The idea is, that as the State leased the property with the nuisance already upon it, a license was thereby conferred upon the lessee to keep the property in the same condition, and consequently, to maintain the nuisance as it existed when the lease took effect. There can be no doubt that it was in the power of the State to grant to the present Western and Atlantic Railroad Company a license to keep and maintain the ditch on the property. By virtue of such license, it would cease, in a legal sense, to be a nuisance, but, in our opinion, a license of this kind, to be valid, would have to be granted unequivocally and in express terms. Otherwise, it will not be presumed that the State intended to confer upon its lessee the authority to maintain an existing nuisance upon the property which caused damage to a private citizen. It cannot be supposed that the legislature, in passing the lease act of November 12th, 1889 (Acts of 1889, p. 362), was aware of the existence of this particular nuisance, or legislated with reference to it or to any others of similar character. The terms of that act show that it was not contemplated that the railroad, the right of way, and the other property and appurtenances to be covered by the lease, should remain in the same physical condition and with no change or alteration throughout the term of the lease. Such a thing would be both unreasonable and impossible. The act provided that all improvements, betterments or ameliorations should be made at the expense of the lessee, and that all attach-

ments to the realty should be considered as permanent; and it required the lessee at all times to keep the road in a first-class condition, thus showing plainly it was expected that much work would have to be done, and that the physical condition of the property would be constantly varied. It is more than probable that if the attention of the legislature had been called to such a matter as that now under consideration, it would have expressly required the lessee to abate nuisances then existing. At any rate, in the absence of clear and express authority in the act to maintain existing nuisances, we are unwilling to hold that the legislature intended to confer any right to do so upon any person or company to whom the railroad might be leased under the terms of the act.

Another contention of the plaintiff in error was, that in no event should the defendant be held liable to the present plaintiff, because, according to the allegations of his amendment, he and others had complained to the former lease company of damage resulting from the overflowing of their lands by reason of the fact that a culvert under the railroad was too small to carry off the water in times of flood, and that when this complaint was made to the old company, the ditch was dug by it to prevent injury to the plaintiff, and remove all cause of complaint. The position of the learned counsel, in view of these allegations, was: that the ditch was dug at the instance or request of the plaintiff below, and that therefore he has no right to complain of the consequences of an act which he himself procured to be done. We do not think this position is maintainable. The amendment does not allege that the plaintiff requested the old lease company to dig this ditch, but simply that he complained to that company of the injury being done to his property on account of the smallness of the culvert. He did not suggest to the company the remedy

to be adopted. It chose, of its own accord, to dig the ditch; and there would be no justice, under these circumstances, in making the digging of the ditch in effect the act of the plaintiff, or an act for the consequences of which he should be held responsible.

If the plaintiff can establish by sufficient evidence the allegations of his declaration, he will be entitled to recover; and the court was therefore right in overruling the motion to dismiss.        *Judgment affirmed.*